IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SARAH VARGAS,<br><br>      Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU, DAVID OH, and THAYNE COSTA,<br><br>      Defendants. | CIVIL NO. 19-00116 LEK-WRP<br><br>[CIVIL RIGHTS ACTION]<br><br>MEMORANDUM IN SUPPORT OF MOTION<br><br>Judge: Hon. Leslie E. Kobayashi<br>Trial Date: August 4, 2021 |

## MEMORANDUM IN SUPPORT OF MOTION

**I.  FACTS**

Corporal Costa has been disciplined at HPD at least seven times. These include discipline for falsification of records, discipline related to an arrest for assault against a female, and discipline for violating standards on impartiality.

Corporal Costa purports not to remember all but one of them (the suspension related to the assault of the girlfriend). Deposition testimony confirmed the following history of HPD discipline of corporal Costa, and his response.

| <u>Year</u> | <u>Event</u> | **Costa's Deposition Testimony** |
|---|---|---|
| 1996 | 3-day suspension | Does not remember. Deposition p. 82; 2-5. (Exhibit A). |

| 1997 | 10-day suspension based on "Knowledge of Laws & Regulations; Obedience to Laws & Regulations; Performance, Conduct, *Falsification of Records, Truthfulness*." Ex. 1 to Costa Deposition. | "I don't remember the incident." Id. p. 81; 9-11. |
|---|---|---|
| 1997 | 10-day suspension | Does not remember. p. 83; 2-4. |
| 1998 | 10-day suspension related to Costa's arrest for family abuse and subsequent charge of assault. Costa Deposition Ex. 13. | Arrested because "I had an argument with my girlfriend". p. 87; 19 – p. 88 |
| 1999 | 1-day suspension based on complaint by internal affairs for "commission of any criminal act". p.90; 3. | Doesn't remember much. p. 89; 2.<br><br>Costa thinks it was because he pled to harassment and received a deferred acceptance from original assault charge. P. 90; 6-19 |
| 2001 | 3-day suspension | "I don't remember or recall this incident." p. 91; l. 18. |
| 2001 | 5-day suspension, for "Knowledge of Laws & Regulations; Obedience to Laws & Regulations; Performance, *impartial attitude*; conduct toward the public." | "I don't recall." p. 92; 14 |

*See* Exhibit "A", Transcript of the Deposition of Thayne Costa and Exhibit "B", selected exhibits to the Deposition of Thayne Costa.

Costa's disciplinary history is noteworthy for both the fact that he was discipled for *falsification of records* and for not being *impartial*, but also in that he claims not to have any memory of what led to all but one of his HPD disciplinary suspensions.

2

The one scenario he does remember is when he was arrested and criminally charged for assaulting a woman. Nonetheless, Costa testified in his deposition that "a female is safe with any police officer." Deposition of Thayne Costa at 70-72 (Sep. 17, 2020).

Plaintiff seeks to cross-examine Costa as to these incidents to establish his character for truthfulness (falsification of records), his bias (partiality) and to show that the significant lapses in memory impeach his credibility and cast doubt on his ability to recall and testify about the events of this case.

## II.   LEGAL STANDARD

In both civil and criminal trials, "[a] motion *in limine* is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Motions *in limine* may be "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Id.* at 4 n.4, 105 S.Ct. 460; *see also City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (explaining motions in limine "are useful tools to resolve issues which would otherwise clutter up the trial" (citations omitted)).

By resolving a motion in limine, the court may prevent the presentation of potentially prejudicial evidence to the jury, which also eliminates the need to try to neutralize a prejudicial taint after the evidence has already been presented. *See Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003).

**III.   DISCUSSION**

**A. THE FEDERAL RULES OF EVIDENCE ALLOWS CROSS EXAMINATION AS TO CERTAIN MATTERS REGARDING TRUTHFULNESS AND BIAS.**

Federal Rules of Evidence ("FRE") Rule 404 states that "Evidence of a witness's character may be admitted under [FRE] Rules 607, 608, and 609." FRE Rule 404. FRE Rule 405 provides that "When a person's character or character trait is an essential element of a . . . defense, the character trati may also be proved by relevant specific instances of the person's conduct."

Here, Costa's ultimate defense is that he is more credible than his partner, Defendant David Oh. In Oh's interview with Detective Allan Kuaana, Oh states

> [Vargas] and Thayne [Costa], my P.O. 9, started, they started getting into it. . . I tried to smooth talk over. "Why don't you go upstairs…" She kept bickering back with Thayne, so I just gently escorted her upstairs, and whatever. And Thayne was downstairs. He was all irritated already.

Kuuana interview with Oh (Feb. 1, 2019) at 9:39:30 a.m. to 9:40:00. Costa, on the other hand, swore under oath that he left Oh and Vargas on the front porch of her house and returned to his car. Costa Depo, 65:15-16 (Sept. 17, 2020).

4

Costa's reputation for truthfulness is an essential element of his defense that he did not know what Oh intended to do to Vargas. Costa's selective forgetfulness, omissions, and prevarications go directly to challenging that defense. When asked what Vargas was wearing that night, Costa confidently states, "a blue T-shirt and black shorts. . . ." *Id.* at 22:15. When asked " "Is that what she had on when she left?", Costa states, "I have no idea." *Id.* at 24:6-7. Similarly, Costa's memory seems to be crystal clear when it suits him, but when asked about his prior suspensions and disciplines as an HPD officer, he cannot remember a single thing regarding what they were about. See, e.g., *id.* at 80:24-81:1 ("Q. What was the basis of this 1997 ten-day suspension?" "A. I don't recall.").

FRE 608(b) both limits and allows certain use of specific instances of conduct to show character.

> "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. **But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:**
>
> **(1) the witness**; or
>
> **(2)** another witness whose character the witness being cross-examined has testified about."

"Rule 608(b) only limits extrinsic evidence that is offered for the sole purpose of attacking the character of the witness. Rule 608(b) does not limit the

[party's] right to offer evidence that impeaches the witness for bias, or prior inconsistent statements, or to impeach his trial testimony." Quoting from *United States v. Abel*, 469 U.S. 45 (1984), the First Circuit wrote, "It would be a strange rule of law which held that relevant, competent evidence which tended to show bias on the part of a witness was nonetheless inadmissible because it also tended to show that the witness was a liar." *United States v. Woodard*, 699 F.3d 1188 (10th Cir. 2012).

Here, Costa ought to properly be cross examined on:

**1) The fact that he was found to have falsified records.**

Plaintiff seeks permission to ask Costa to acknowledge the fact that HPD made this finding of falsification of records, and elicit that Costa claims not to remember what it is about. HRE 608(b) allows the Court wide discretion in allowing evidence that the witness is "probative of the character for truthfulness or untruthfulness." The finding that this police supervisor has falsified records in the past is probative of his character for untruthfulness. And the fact that he claims not to remember is it is further circumstantial evidence on untruthfulness.

**2) The fact that Costa has seven prior disciplines and purports not to remember any of them.**

The Court has discretion to allow a brief cross examination as to the fact that Costa has been subject to discipline seven times, but only remembers the reason for one of them (his arrest for assault). While specific instances of conduct might

6

be less likely to be admitted, the fact that Costa incredulously pretends not to remember any of them, "also tend[s] to show that the witness was a liar."

Plaintiff seeks to ask Costa about each discipline/suspension and elicit his expected response of "I don't recall". Plaintiff need not go into any specifics about the disciplines, (except as to falsification of records) but the jury ought to evaluate whether the witness purporting not to recall any of them is evidence of dishonesty, or bias in favor of his and HPD's side of this case.

**3) That Costa was disciplined for violating impartiality.**

Costa's prior discipline for violating impartiality suggests bias. "Bias is the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or *by the witness' self-interest. United States v. Abel*, 469 U.S. 45, 53, 83 L. Ed. 2d 450, 105 S. Ct. 465 (emphasis added).

Costa, in deposition, showed his bias for his image in the case, as opposed to the truth, when he in-credibly denied any memory of the prior disciplines. It strains credibility to consider this testimony to be true. And as such, the Court ought to let the jury make the determination as to whether the purported lack of memory is feigned, credible, or suggests bias and an agenda in the outcome.

"Bias is one of the five acceptable methods of attacking the credibility of a witness's testimony: (1) attacking the witness's general character for truthfulness; (2) showing that, prior to trial, the witness has made statements inconsistent with his testimony; (3) showing that the witness is biased; (4) showing that the witness has an impaired capacity to perceive, recall, or relate the event about which he is testifying; and (5) contradicting the substance of the witness's testimony. Wright & Gold, *Federal Practice and Procedure* § 6094 (1990).  United States v. Lindemann, 85 F.3d 1232, 1243 (7th Cir. 1996).

**4) That Costa was arrested and/or disciplined for violating the law and assaulting his girlfriend.**

Costa, in his deposition was asked about why HPD had a policy prohibiting male officers from transporting female officers alone.  He testified that he felt the rule was for the protection of the *officer*.  See Exhibit "A", Transcript of the Deposition of Thayne Costa at p. 69; 7:17.

> A.    It's better to have somebody escorting the male officer.
> Q. Why? What's your understanding as to why?
> [objections]
> BY MR. HEMPEY:
> Q. You can answer.
> A. So that there's a witness. …
> Q. And in your opinion… is a female arrestee safer in a car alone with a male officer being transported than she is drunk in her house alone with a male officer?
> [Objections]
> A. In my opinion, a female is safe with any police

8

officer.

*Id.* at pgs 71:19-25; 72:4-24.

Plaintiff seeks to cross examine on the fact that Costa was disciplined for family abuse, and found by HPD to have violated related laws. The fact that Costa was disciplined for violence against a woman directly contradicts his sworn testimony that a woman is always safe with a police officer. It is relevant impeachment evidence.

Plaintiff asks to be able to establish this very limited point on cross-examination, as it undermines the credibility of the witness's sworn testimony about the perpetual safety of females with male police officers. This record demonstrates that he knows that is not true.

## IV.  CROSS EXAMINIATION AS TO COSTA'S LACK OF MEMORY AS TO ALL OF THE DISCIPLINES SHOULD BE ALLOWED

In evaluating Costa's testimony, the jury ought to be able to consider anything that has a tendency reasonably to prove or disprove the truthfulness of the testimony of the witness.

Costa responded, "I don't recall," or "I don't remember," to nearly every question about his about prior HPD discipline, including a finding that he falsified records.

To be sure, a juror reasonably can accept that a witness may be unable recall each such findings against him. But a reasonable juror would be highly dubious of

9

any witness who claimed a lack of memory nearly every time he is asked about any prior suspension. Such lack of memory also undermines the witness's veracity and ability to recall critical facts about the fact of the night in question.

Costa's selective memory tends reasonably disprove the truthfulness of his testimony.  While Costa is expected to testify at trial as to numerous details about the night in question, the jury should be able to see the dramatic limitations in his ability to remember significant events.

## V.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court allow cross examination of Corporal Costa as to:

1) The fact that he was found to have falsified records.

2) The fact that Costa has seven prior disciplines and purports not to remember all but one of them.

3) That Costa was disciplined for violating impartiality; and

4) That Costa was arrested and/or disciplined for violating the law and assaulting his girlfriend.

DATED: Honolulu, Hawaii July 9, 2021.

/s/ Mateo Caballero  
MATEO CABALLERO

/s/ Daniel Hempey  
DANIEL G. HEMPEY  
BRIAN K. MACKINTOSH  
Attorneys for Plaintiff  
SARAH VARGAS