IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SARAH VARGAS; | ) CIVIL NO. 19-00116 LEK-WRP |
| | ) |
| Plaintiff, | ) |
| | ) FINDINGS AND |
| vs. | ) RECOMMENDATION TO GRANT |
| | ) IN PART PLAINTIFF'S MOTION |
| DAVID OH, | ) FOR DAMAGES AGAINST DAVID |
| | ) OH |
| Defendant. | ) |
| | ) |

FINDINGS AND RECOMMENDATION TO GRANT IN PART PLAINTIFF'S
MOTION FOR DAMAGES AGAINST DAVID OH

Before the Court is Plaintiff Sarah Vargas' (Plaintiff) Motion for

Damages Against Defendant David Oh, see ECF No. 455 (Motion).  The Motion

was served on Defendant David Oh (Defendant Oh) on or around April 24, 2023.

See Certificate of Service, ECF No. 455-2.  On June 9, 2023, the Court directed

Plaintiff to file additional evidence in support of her Motion, and Plaintiff

complied by filing a Supplemental Memorandum on July 6, 2023, see ECF Nos.

460, 461.  This case was administratively closed on July 17, 2023, after Defendant

Oh filed a Notice of Bankruptcy, see ECF No. 462.  However, on October 4, 2023,

the case was reopened after Plaintiff was granted relief from the automatic stay in

Defendant Oh's bankruptcy case, see ECF No. 464.  When the Court reopened

Plaintiff's Motion, it directed Plaintiff to serve a copy of the Motion, the

Supplemental Memorandum, and two of the Court's Minute Orders on Defendant

Oh.  See Minute Order, ECF No. 467.  Although Defendant Oh did not defend in

this action, he filed an Opposition on October 25, 2023, see ECF No. 471.  Plaintiff

filed her Reply on December 1, 2023, see ECF No. 476.  The Court finds this

Motion suitable for disposition without a hearing pursuant to Rule 7.1(c) of the

Local Rules of Practice of the United States District Court for the District of

Hawai'i.  After careful consideration of the record in this action and the relevant

legal authority, the Court FINDS AND RECOMMENDS that Plaintiff's Motion be

GRANTED IN PART.[1]

## FACTUAL BACKGROUND

This case concerns the sexual assault of Plaintiff by Defendant Oh, an

Officer with the Honolulu Police Department (HPD), while he was on duty and

responding to a 911 call at Plaintiff's home.  See First Am. Compl., ECF No. 38.

Defendant Thayne Costa also responded to the 911 call at Plaintiff's home on the

night of the sexual assault.  See id. ¶ 24.  Defendant City and County of Honolulu

employed both Defendant Oh and Defendant Costa.  See id.

---

[1] Within fourteen days after a party is served with the Findings and
Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written
objections in the United States District Court.  A party must file any objections
within the fourteen-day period to preserve appellate review of the Findings and
Recommendation.

## I.     Incident

On March 14, 2017, Defendant Oh and Defendant Costa were dispatched to Plaintiff's house regarding a disturbance between Plaintiff and her friend.  See Pl.'s Mot., ECF No. 455 at 2; First Am. Compl., ECF No. 38 ¶ 16.  Plaintiff's husband who was in the Navy at this time was overseas.  Upon arrival, Defendant Oh recognized Plaintiff because he had been dispatched to the same residence before.  See First Am. Compl., ECF No. 38 ¶ 33; Def.'s Opp'n, ECF No 471-2, Ex. B at 4 (filed under seal); Def.'s Opp'n, ECF No. 471-3, Ex C at 5 (filed under seal).

While at her residence, Plaintiff was observed being "extremely intoxicated . . . and could not fully comprehend questions or formulate answers . . . [Plaintiff] was more drunk than [her friend] and seemed unpredictable and unsteady on her feet."  Pl.'s Reply, ECF No. 476 at 2 (quoting the Honolulu Police Department Incident Report, dated March 14, 2017, attached as Exhibit 2 to Plaintiff's Reply); Def.'s Opp'n, ECF No. 471-2, Ex. B at 4 (filed under seal); Def.'s Opp'n, ECF No. 471-1, Ex. A at 17 (filed under seal).  Because Plaintiff was not responding well to Defendant Costa in her communication with him, Defendant Oh told Defendant Costa that he could handle Plaintiff and asked Defendant Costa to leave the residence.  See First Am. Compl., ECF No. 38 ¶¶ 32, 36; Def.'s Opp'n, ECF No. 471-3, Ex. C at 3 (filed under seal).  At some point

3

thereafter, Defendant Oh escorted Plaintiff to her bedroom upstairs and Defendant

Costa left the residence. <u>See</u> First Am. Compl., ECF No. 38 ¶¶ 37, 48.

While in her bedroom, Defendant Oh sexually assaulted Plaintiff. <u>See</u>

<u>id.</u> ¶ 48; Def.'s Opp'n, ECF No. 471-3, Ex. C at 3-4 (filed under seal); Pl.'s Mot.,

ECF No. 456-1, Ex. 1, Expert Report of Dr. Alex Bivens ("Bivens Report") at 15

(filed under seal).

## II.    Aftermath

The sexual assault was reported to the Naval Crime Investigative

Service, which transferred authority of the investigation to the Federal Bureau of

Investigation. <u>See</u> First Am. Compl., ECF No. 38 ¶ 57.  The Navy responded

quickly by returning Plaintiff's husband home from overseas, relocating Plaintiff

and her family to California, and providing Plaintiff with a therapist, all within a

few weeks.  <u>See</u> Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 15 (filed under

seal).[2]  Plaintiff felt the need to leave Hawaii because she feared retaliation by

---

[2] The Court finds it necessary to unseal this portion of the Bivens
Report (ECF No. 456-1) discussing the Navy's response to the sexual assault for
the purposes of the Court's discussion below.  The Bivens Report was sealed in
order to protect Plaintiff's confidential and personal information. <u>See</u> Pl.'s Mot. to
Seal, ECF No. 452 at 2.  The Court finds that the information cited in this Order
regarding the Navy's response to the sexual assault does not contain personal and
confidential information and is relevant to the arguments raised and discussed
below.  Accordingly, the Court unseals only the information cited in this sentence.
The remainder of the Bivens Report, as well as the other sealed exhibits to the
parties' briefs, remain sealed except those portions of the sealed exhibits cited by

Defendant Oh or other members of HPD.  <u>See</u> First Am. Compl., ECF No. 38 ¶ 58; Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 15 (filed under seal).  Because Plaintiff had suffered previous sexual assaults in her life, including being sexually assaulted by a male in the Navy, Plaintiff was especially vulnerable to the March 14, 2017 assault by Defendant Oh.  <u>See</u> Def.'s Opp'n, ECF No. 471 at 6; Pl.'s Mot., ECF No. 455 at 5; Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 20 (filed under seal).

Plaintiff was eventually diagnosed with Post-Traumatic Stress Disorder (PTSD), Major Depressive Disorder, and Anxiety on a "severe" level. Pl.'s Mot., ECF No. 455 at 7; Pl.'s Suppl. Memo. For Damages, Declaration of Sarah Vargas (Vargas Decl.), ECF No. 461-1 ¶ 2a; Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 4, 18, 19, 23, 24 (filed under seal).  Additionally, the March 14, 2017 incident caused Plaintiff to suffer the highest degree of institutional betrayal by HPD, exacerbating her PTSD.  <u>See</u> Pl.'s Mot., ECF No. 455 at 4, 6; Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 18, 20 (filed under seal).

According to Plaintiff, Defendant Oh's sexual assault caused Plaintiff "egregious physical, mental, and emotional harms."  Pl.'s Mot., ECF No. 455 at 3. Plaintiff experiences "psychic pain and suffering well beyond that which is

---

the parties in their briefs, which the parties have unsealed on their own by disclosing the information in the public record.

typically assessed" and Plaintiff is "psychiatrically unstable due to chronic and severe PTSD." Id. at 7-8 (quoting Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 24 (filed under seal)); see also Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 19 (filed under seal).

Plaintiff's life has been negatively impacted in various ways because of Defendant Oh's rape. For example, Plaintiff reports that her marriage has suffered extreme hardship such that she is no longer able to be physically intimate with her husband. See Vargas Decl., ECF No. 461-1 ¶ 2c; Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 16 (filed under seal). "The most frequently observed impact of rape on sexual behavior is an eventual loss of interest in, desire for, and enjoyment of consensual sex." Pl.'s Mot., ECF No. 455 at 6-7 (quoting Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 22 (filed under seal)). In fact, Plaintiff's attitude toward men in general has deteriorated as she "despises" men. Vargas Decl., ECF No. 461-1 ¶ 2i. The assault, and Plaintiff's resulting PTSD, also deteriorated Plaintiff's relationship with her daughter. See Vargas Decl., ECF No. 461-1 ¶ 2d. Plaintiff's health has declined as she has trouble sleeping due to the depression and has gained weight. See id. ¶ 2f.

The assault has also affected Plaintiff's professional life. Plaintiff attempted to work as a corrections officer but being around uniformed officers triggered flashbacks to the incident making it "impossible" to work there. Id. ¶ 2e.

6

Plaintiff attempted to work with at-risk youths but found their traumas triggering for Plaintiff's own trauma.  See id.  Plaintiff has difficulty concentrating and blocking out thoughts of the assault and its aftermath.  See id. at 2g.  Plaintiff is currently unemployed.  See id. at 2e.

"Due to her severe and chronic mental health condition, [Plaintiff] is disabled on a long-term basis at this juncture."  Pl.'s Mot., ECF No. 455 at 7 (quoting Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 24 (filed under seal)). Looking forward, Plaintiff will require ongoing medication monitoring as well as "intensive psychotherapy from highly-trained specialists in treating multiple sexual traumas for the foreseeable future."  Id. (quoting Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 24 (filed under seal)).

PROCEDURAL POSTURE

A trial was held in August 2021, on Plaintiff's claim for negligence (Count V) and negligent infliction of emotional distress (Count VII) against Defendant Costa and Defendant City and County of Honolulu only as Defendant Oh did not appear or defend in this action.  At the conclusion of trial, the jury returned a verdict finding that Plaintiff proved that Defendant Oh's sexual assault was a legal cause of injury or damage to Plaintiff and that Plaintiff did not prove by a preponderance of the evidence that Defendant Costa was negligent.  See Special Verdict Form, ECF No. 409, at 2-4.  Following the verdict, the parties

stipulated to dismissing all claims against Defendant Costa and Defendant City and County of Honolulu.  See Stip. for Partial Dismissal, ECF No. 437; Stip. for Partial Dismissal, ECF No. 439.

On January 26, 2023, default judgment was entered against Defendant Oh on Counts I, II, IV, and VIII.  See Order Adopting Findings And Recommendation To Grant Plaintiff's Renewed Request To Enter Default Judgment Against Defendant David Oh, ECF No. 449.  Thereafter, Plaintiff filed the present Motion for Damages seeking $280,000.00 in special damages and between $500,000 and $1,000,000 in general damages for each of the defaulted claims.  See Pl.'s Mot., ECF No. 455 at 8-9.

On June 9, 2023, the Court directed Plaintiff to file additional evidence in support of the Motion including a declaration detailing Plaintiff's physical and/or psychological injuries for the purpose of awarding general damages and legal support for her request for damages in the amount of $500,000 and $1,000,000 for each claim, as requested in her Motion. See Minute Order, ECF No. 459.  Additionally, Plaintiff was asked to explain why she is entitled to $280,000 in special damages for certain future medical treatment recommended by Dr. Bivens in the Bivens Report in light of District Court's Order regarding Motion in Limine No. 10, which excluded the same testimony from trial.  See id.

In her Supplemental Memorandum (ECF No. 461), Plaintiff provided

8

detail regarding her physical and/or psychological injuries but did not provide any

legal authority supporting her request for general damages in the amount of

$500,000-$1,000,000 for each claim.  Additionally, Plaintiff withdrew her request

for special damages.  Thus, only Plaintiff's request for general and punitive

damages remains in question.

## DISCUSSION

Although a defendant's default establishes liability, it does not

establish all relief to which a plaintiff is entitled.  A plaintiff must provide evidence

to support its requested relief and that relief "must not differ in kind from, or

exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  As

noted above, the rule that the factual allegations of the complaint are taken as true

does not apply to the amount of damages.  See TeleVideo Sys., Inc. v. Heidenthal,

826 F.2d 915, 917-18 (9th Cir. 1987).  "To recover damages after securing a

default judgment, a plaintiff must prove the relief it seeks through testimony or

written affidavit."  Concord Transportation, Inc. v. Houser Logistics, Inc., Case

No. CV 19-7453 FMO (Ex), 2020 WL 2046169, at *5 (C.D. Cal. Jan. 3, 2020)

(citation omitted).  "Courts apply the preponderance of the evidence standard to a

plaintiff's damages case on default judgment."  Id.

Rule 55 provides that the court may conduct a hearing to effectuate

judgment when it needs to determine the amount of damages.  See Fed. R. Civ. P.

55(b)(2).  However, if damages are capable of being determined from figures in documentary evidence or detailed affidavits, default judgment may be entered without a hearing.  See United States v. Yermian, 2016 WL 1399519, at *3 (C.D. Cal. Mar. 18, 2016) ("Rule 55 does not require the court to conduct a hearing on damages, so long as it ensures there is an adequate basis for the damages awarded in the default judgment.").

The Motion is supported by Plaintiff's Supplemental Memorandum (ECF No. 461), the Declaration of Sarah Vargas (ECF No. 461-1), and by Dr. Alex Bivens' expert report (i.e., the Bivens Report) (ECF No. 456-1).

Default judgment has been entered against Defendant Oh regarding Plaintiff's claims for violation of Plaintiff's Fourteenth Amendment rights (Count I), violation of Plaintiff's Fourth Amendment rights (Count II), sexual assault (Count IV), and intentional infliction of emotional distress (Count VIII).  Counts I and II are both are § 1983 claims.  "[T]he basic purpose of a § 1983 damage award should be to compensate persons for injuries caused by the deprivation of constitutional rights."  United States v. Northrop Corp., 59 F.3d 953, 967 (9th Cir. 1995) (quoting Farrar v. Hobby, 506 U.S. 103, 112 (1992)).  Damages under 42 U.S.C. Section 1983 may be both punitive and compensatory.  See Dolphin v. Ruiz, No. CV 07-0645-PA(JTL), 2008 WL 4552940, at *3 (C.D. Cal. Oct. 9, 2008).

## I.    Compensatory Damages

Compensatory damages "are mandatory; once liability is found, the [factfinder] is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss." Smith v. Wade, 461 U.S. 30, 52 (1983). Plaintiff requests between $2,000,000-$4,000,000 in general damages for Counts I, II, IV, and VIII. This is because Plaintiff requests between $500,000-$1,000,000 for each count. However, as a preliminary matter, the Court finds that Plaintiff's request for a range of $500,000-$1,000,000 for *each* claim is not supported by the law. The general rule is that a party may not receive double recovery for a single injury. See Wang v. Hsu, 15 F.3d 1095 (9th Cir. 1993) (citing 18 C.A. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4476 at 775 (1981)); Blair v. Ing, 95 Haw. 247, 259, 21 P.3d 452, 464 (2001) ("Under no circumstances, however, is a plaintiff entitled to double recovery where both legal theories are advanced and proved."). The Court's June 9, 2023 Minute Order gave Plaintiff a second opportunity to provide the Court with legal authority to depart from the general rule but Plaintiff did not do so. Thus, the Court FINDS that Plaintiff has not established that she is entitled to a double recovery for the same injuries.

Turning now to Plaintiff's compensatory damages, "general damages are a type of compensatory damages." SelectBuild Nevada, Inc. v. S & S Concrete & Materials, LLC, No. 2:10-CV-02142-GMN, 2011 WL 3022444, at *2 (D. Nev.

11

July 21, 2011).  "Compensatory damages under § 1983 may include damages for injuries suffered due to any mental anguish, such as mental and emotional distress, as well as physical injuries."  Hernandez v. Ballam, No. 117CV00468BAMPC, 2018 WL 1382352, at *1 (E.D. Cal. Mar. 19, 2018) (citing Memphis Cmty. Sch. Dist. v. Táchira, 477 U.S. 299, 307 (1986) (compensatory damages are recoverable in § 1983 cases for injuries including "personal humiliation, and mental anguish and suffering.").  Additionally, under Hawai'i law, plaintiffs may recover general damages for the tort of IIED.  See Taylor v. Franko, No. CIV. 09-00002 JMS, 2011 WL 2746714, at *5 (D. Haw. July 12, 2011) (finding the plaintiff was entitled to general damages for an IIED).

Plaintiff requests an award of damages that considers the extent of her pain and suffering, her psychological health, and the impact that the March 14, 2017 assault has had on her marriage, family, career, and future.  See Pl.'s Mot. ECF No. 455 at 8-9; Vargas Decl., ECF No. 461-1; Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 20 (filed under seal).

In response to Plaintiff's request for damages, Defendant Oh first argues that Plaintiff has allegedly failed to establish that the March 14, 2017 incident was "anything but consensual."  Def.'s Opp'n, ECF No. 471 at 2.  The Court does not address this argument because it goes to liability, not damages. Additionally, the Court is not convinced Plaintiff had the capacity to consent to the

assault as there is ample evidence in the record that she was highly intoxicated at the time of the incident. <u>See</u> Pl.'s Reply, ECF No. 476-3 at 1-2; Def.'s Opp'n, ECF No. 471-2, Ex. B at 4 (filed under seal); Def.'s Opp'n, ECF No. 471-1, Ex. A at 17 (filed under seal); Def.'s Opp'n, ECF No. 471-3, Ex. C at 4 (filed under seal). Thus, the Court FINDS and RECOMMENDS that Defendant Oh's argument that Plaintiff consented to the assault be disregarded.

Defendant Oh next argues that Plaintiff's "psychological diagnoses pre-existed her encounter" with Defendant Oh. Def.'s Opp'n, ECF No. 471 at 5. Defendant Oh cites to the Bivens Report where Dr. Bivens points out that Plaintiff's previous sexual trauma, her revictimization in her twenties, and her mental health issues from 2011-2017 "predisposed her to having such a severe case of PTSD now." <u>Id.</u> (quoting Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 23 (filed under seal)).

This argument ignores Plaintiff's position that she is an "eggshell Plaintiff" and thus, according to Plaintiff, Defendant Oh is liable for the resulting damage, even though Plaintiff had a pre-existing condition. Pl.'s Mot., ECF No. 455 at 5; Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 21, 23 (filed under seal).

The eggshell plaintiff doctrine "makes the defendant responsible for all damages that the defendant legally caused even if the plaintiff was more

13

susceptible to injury because of a preexisting condition or injury." Antonio for

Antonio v. Baek, No. 2021-SCC-0006-CIV, 2023 WL 2484949, at *4 (N. Mar. I.

Mar. 14, 2023) (citation omitted); Jordan v. Atchison, Topeka & Santa Fe Ry. Co.,

934 F.2d 225, 228–29 (9th Cir. 1991) ("It is a well-settled principle of tort law that

when a defendant's negligence causes an injury to a plaintiff, the defendant is

liable for the resulting damage to the plaintiff, even though the plaintiff had a

preexisting condition that made him more susceptible to injury or made the

consequences to him more severe."). Thus, "it is no defense to an award of full

damages that the plaintiff's injury was amplified by a preexisting condition for

which the defendant was not responsible." Avitia v. Metro. Club of Chicago, Inc.,

49 F.3d 1219, 1228 (7th Cir. 1995) (citing Jordan, 934 F.2d at 228–29).

Because Defendant Oh did not respond to Plaintiff's "eggshell

plaintiff" argument, the Court deems any objection by Defendant Oh abandoned or

waived. See Lansdown v. Bayview Loan Servicing, LLC, No. 22-CV-00763-TSH,

2023 WL 2934932, at *4 (N.D. Cal. Apr. 12, 2023) (citation omitted) ("Failure to

respond in an opposition brief to an argument put forward in an opening brief

constitutes waiver or abandonment."). Accordingly, the Court FINDS and

RECOMMENDS that the full extent of Plaintiff pain and suffering, including her

diagnoses, be taken into consideration upon awarding Plaintiff's general damages.

Finally, Defendant Oh argues that Dr. Bivens' conclusion regarding

Plaintiff's institutional betrayal diagnosis is inconsistent because he reports that

Plaintiff only suffers institutional betrayal regarding HPD, but she does not suffer

institutional betrayal with the Navy "despite being raped in the Navy." Def.'s

Opp'n, ECF No. 471 at 6. In further support of Defendant Oh's argument, he

points out that Dr. Bivens states that Plaintiff "had a difficult time adjusting to life

after the Navy. She had many medical visits that included mental health

complaints." Id. at 7. Thus, according to Defendant Oh, it is inconsistent for

Plaintiff to suffer institutional betrayal with respect to HPD but not the Navy.

        The Court finds this argument unpersuasive as there is evidence in the

Bivens Report that, while Plaintiff faced difficulty initially reporting the assault to

the Navy, the issue was ultimately resolved in Plaintiff's favor and she was able to

move on from the incident. See Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report

at 11 (filed under seal). Additionally, the Bivens Report discusses the Navy's

quick response to the March 14, 2017 incident including returning Plaintiff's

husband home to her, relocating Plaintiff's family to California, and providing

Plaintiff with a therapist. See id. at 15. The Bivens Report also notes that Plaintiff

states that HPD's response to the sexual assault was not supportive. See id. Thus,

the Bivens Report sets forth a logical explanation as to why Plaintiff suffers from

institutional betrayal with respect to HPD and not the Navy. The Court FINDS

that the Bivens Report is consistent in its reporting that Plaintiff suffers from

15

institutional betrayal with respect to HPD and not the Navy.  Accordingly, the

Court RECOMMENDS that Plaintiff's institutional betrayal diagnosis be

considered in awarding Plaintiff's general damages.

Having addressed the parties' arguments, the Court now turns to its

recommendation for an appropriate award of general damages for Plaintiff.  The

Court notes that damages for pain and suffering are difficult to measure in precise

monetary terms.  See Kanahele v. Han, 125 Haw. 446, 451, 263 P.3d 726, 731

(2011) (citation omitted) ("General damages encompass all the damages which

naturally and necessarily result from a legal wrong done, . . . and include such

items as pain and suffering, inconvenience, and loss of enjoyment which cannot be

measured definitively in monetary terms.").  However, a court in this District has

stated that the "debilitating effects" following a sexual assault are worth "hundreds

of thousands of dollars."  Panion v. United States, 385 F. Supp. 2d 1071, 1088 (D.

Haw. 2005).  In Panion, the court awarded a rape victim $700,000 in general

damages, which reflected, among other things, the "debilitating effects" of the

sexual assault, the fact that Plaintiff "never returned to her old self and that her

marriage is irreparably damaged or destroyed."  Id.  The court also found that

"whether or not treatment helps . . . , [plaintiff] will live the rest of her life affected

by the assault."  Id.

Another court in the Ninth Circuit recommended a similar amount of

general damages for a plaintiff who was raped while intoxicated by a police officer responding to a call that plaintiff had been driving while intoxicated. See L.B. v. United States, No. CV 18-74-BLG-SPW-TJC, 2020 WL 2736202, at *2 (D. Mont. May 6, 2020), report and recommendation adopted sub nom. L.B. v. United States, Bureau of Indian Affs., No. CV 18-74-BLG-SPW, 2020 WL 2732074 (D. Mont. May 26, 2020). The court recommended that plaintiff be awarded $750,000 for the physical and emotional pain and suffering as a result of the rape and for the mental and emotional pain she will likely suffer in the future. See id. at *10 ("[T]he Court recommends that L.B. be awarded $250,000 for the physical and emotional pain and suffering as result of the rape itself; . . . and an additional $500,000 to compensate L.B. for her mental and emotional pain and suffering she will likely endure for her remaining life expectancy.").

As discussed above, the Bivens Report and Plaintiff's declaration detail the physical, mental, and emotional harms Plaintiff suffered in the aftermath of Defendant Oh's sexual assault including the impact the assault had on Plaintiff's marriage, family relationships, and professional life. The Bivens Report explains the physical manifestations of the assault on Plaintiff as well as the severe psychological impact the incident has had on Plaintiff's mental state and her psychological diagnoses. See Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at 16-24 (filed under seal). The Court considers that Plaintiff is an "eggshell

17

Plaintiff" and, therefore, Defendant is liable for the resulting damage of the sexual

assault, even though Plaintiff may have had a preexisting condition that made her

more susceptible to injury or made the consequences to her more severe. <u>See</u>

<u>Jordan</u>, 934 F.2d at 228–29; Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report at

21-23 (filed under seal). The Court recognizes Plaintiff's need for ongoing

medical treatment that will require seeing highly-trained specialists. <u>See</u> Pl.'s

Mot., ECF No. 455 at 7 (quoting Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens Report

at 24 (filed under seal)). Finally, the Court considers that Plaintiff, her marriage,

her family relationships, and her professional life will likely never return to the

way they were prior to the assault and, therefore, Plaintiff will live the rest of her

life affected by the assault. <u>See generally</u> Pl.'s Mot., ECF No. 456-1, Ex. 1, Bivens

Report (filed under seal); Vargas Declaration, ECF No. 461-1.

Accordingly, the Court FINDS that Plaintiff has established by a

preponderance of the evidence that she is entitled to general damages and

RECOMMENDS that Plaintiff be awarded $750,000 in general damages.

## II.    Punitive Damages

Plaintiff also seeks punitive damages against Defendant Oh but does

not request a specific amount of damages. "[P]unitive damages in an action under

§ 1983 [may be assessed] when the defendant's conduct is shown to be motivated

by evil motive or intent, or when it involves reckless or callous indifference to the

federally protected rights of others." Smith, 461 U.S. at 56; see also Housing of Marin v. Combs, 285 F.3d 899, 907 (9th Cir. 2002) (finding that punitive damages may be assessed on a default judgment under 42 U.S.C. § 1983).  Unlike compensatory damages, which are designed to redress the harm caused by a defendant's conduct, punitive damages "are aimed at deterrence and retribution." In re Roundup Prod. Liab. Litig., 385 F. Supp. 3d 1042, 1046 (N.D. Cal. 2019), aff'd sub nom. Hardeman v. Monsanto Co., 997 F.3d 941 (9th Cir. 2021) (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2013)).

Here, the Court FINDS that Defendant Oh's reprehensible conduct involves at least a reckless or callous indifference to the federally protected rights of others and his conduct, therefore, supports an award of punitive damages.

The Court now turns to determining the amount of punitive damages. Other courts considering single and multi-incident sexual assault cases by an officer have awarded a wide range of punitive damages in comparison to compensatory damages.  See e.g., Lewis v. Pugh, 289 F. App'x 767, 777 (5th Cir. 2008) (affirming a jury verdict of $50,000 in compensatory and $250,000 in punitive damages against an officer who offered a woman a ride home and then took her to an abandoned trailer and raped her); Campbell v. Graham, No. 3:06-CV-444, 2010 WL 2901826, at *3 (E.D. Tenn. July 21, 2010) (awarding a default judgment of $25,000 in compensatory and $25,000 in punitive damages against an

officer who responded to a domestic disturbance and raped the woman while

transporting her to her father's home); Mathie v. Fries, 121 F.3d 808, 813-817 (2d

Cir. 1997) (upholding award of $250,000 in compensatory damages and $200,000

in punitive damages as appropriate where corrections officer sexually abused and

forcibly sodomized pretrial detainee on multiple occasions); Amador v. Galbreath,

No. 10-CV-6702L, 2013 WL 1755784, at *3 (W.D.N.Y. Apr. 24, 2013) (awarding

$250,000 in compensatory damages and $250,000 in punitive damages where

corrections officer sexually assaulted inmate); Ortiz v. Lasker, 2010 U.S. Dist.

LEXIS 89394, 2010 WL 3476017 (W.D.N.Y.2010) (awarding $250,000 in

compensatory and $250,000 in punitive damages to inmate raped twice by

corrections officer); Cash v. Cnty. of Erie, No. 04-CV-0182-JTC(JJM), 2009 WL

3199558, at *4 (W.D.N.Y. Sept. 30, 2009) (entering default judgment of $500,000

compensatory and $150,000 punitive damages against a detention center guard

who assaulted and raped an inmate); Chavez v. Poleate, No. 2:04-CV-1104 CW,

2010 WL 678940, at *3 (D. Utah Feb. 23, 2010) (awarding non-economic

compensatory damages in the amount of $435,332.50 and $1 million in punitive

damages for a rape by a prison guard causing physical injury and resulting in

psychological symptoms); Trinidad v. City of Bos., No. CIV.A. 07-11679-DPW,

2011 WL 915338, at *6 (D. Mass. Mar. 15, 2011) (collecting cases and noting that

compensatory damages "for-usually multi-incident-sexual assault and rape of

inmates or detainees by prison guards and corrections officers have ranged from

$100,000 to $500,000").

        While the Court considers the above cases, the Court is cognizant that,

in determining the amount of punitive damages to award, "there is no fixed

formula for punitive damages, [although] ratios of punitive damages to

compensatory damages exceeding single digits are viewed with skepticism."

Awadan v. Reebok Corp. Headquarter, No. 2:17-CV-01148-KJM-AC, 2019 WL

5783481, at *2 (E.D. Cal. Nov. 6, 2019).  The Supreme Court instructs that courts

reviewing punitive damages consider three guideposts: "(1) the degree of

reprehensibility of the defendant's misconduct; (2) the disparity between the actual

or potential harm suffered by the plaintiff and the punitive damages award; and (3)

the difference between the punitive damages awarded by the jury and the civil

penalties authorized or imposed in comparable cases."  Thinh Luong v. Segueira,

No. CV 16-00613 LEK-KSC, 2018 WL 4677768, at *16 (D. Haw. Sept. 28, 2018)

(quoting State Farm, 538 U.S. at 418).

        The degree of reprehensibility is the most important factor.  See State

Farm, 538 U.S. at 419.  The Supreme Court also instructs courts to determine the

reprehensibility of a defendant by considering whether: "the harm caused was

physical as opposed to economic; the tortious conduct evinced an indifference to or

a reckless disregard of the health or safety of others; the target of the conduct had

21

financial vulnerability; the conduct involved repeated actions or was an isolated

incident; and the harm was the result of intentional malice, trickery, or deceit, or

mere accident." Id.

After consideration of the three guideposts and giving special care to

the issue of reprehensibility, the Court finds that the March 14, 2017 assault was an

isolated incident and there is no evidence of financial vulnerability in this case.

The Court also finds, however, that Defendant Oh sexually assaulted a vulnerable

woman while she was intoxicated and while Defendant Oh was responding to her

home in his official capacity.  Plaintiff relied on Defendant Oh to protect her and

others as an officer responding to a 911 call; instead, Defendant Oh sent the other

officer away and seized the opportunity to sexually assault an intoxicated woman

in her own home.  The harm that resulted was physical, not solely economic, and

destroyed Plaintiff's marriage and family.  Defendant Oh's conduct evinced

indifference or a reckless disregard for the health and safety of Plaintiff.  After

observing Plaintiff intoxicated, because Defendant Oh told Defendant Costa that he

could handle Plaintiff and asked Defendant Costa to leave the residence, Defendant

Oh's behavior demonstrated a "intentional malice, trickery, or deceit," and not a

"mere accident."

In an effort to deter future similar conduct, the Court FINDS and

RECOMMENDS that an appropriate award of punitive damages in this case is

22

$250,000.

## CONCLUSION

The Court FINDS and RECOMMENDS that Plaintiff's Motion for Damages Against Defendant David Oh be GRANTED IN PART.  See Pl.'s Mot., ECF No. 455.  The Court recommends that Plaintiff be awarded $1,000,000 in damages ($750,000 in general damages and $250,000 in punitive damages).

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, February 1, 2024.



Wes Reber Porter
United States Magistrate Judge

Sarah Vargas v. David Oh; CIVIL NO. 19-00116 LEK-WRP; FINDINGS AND RECOMMENDATION TO GRANT IN PART PLAINTIFF'S MOTION FOR DAMAGES AGAINST DAVID OH